UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL EDWARD WESTMORELAND,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:24-cv-1049-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT**<br><br>**(Doc 11, 15)** |

**I.    Introduction**

Plaintiff Paul Edward Westmoreland appeals the decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.[1]  Because substantial evidence and applicable law do not support the ALJ's decision, the appeal will be granted.

**II.    Factual and Procedural Background**

On July 11, 2022, Plaintiff filed for DIB and SSI alleging disability beginning on October 20, 2020.  AR 14, 253–59, 268–74.  Plaintiff later amended his alleged disability onset date to March 15, 2021.  AR 14, 293–94. The Commissioner denied the applications initially and on reconsideration.  AR 104–05, 117–18.  The ALJ held a hearing on March 5, 2024.  AR 34–65.  On June 12, 2024, the ALJ issued an unfavorable decision.  AR 14–26.  The Appeals Council denied review on August 2, 2024 (AR 1–6) and this appeal followed.

**III.    The Disability Standard**

Under 42 U.S.C. §405(g), this court has the authority to review the Commissioner's denial of disability benefits.  Reversal is appropriate when the ALJ's findings are based on legal error or unsupported by substantial evidence."  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is that which could lead reasonable minds to accept a conclusion.  *See*

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge.  Docs. 7, 8.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

The court must consider the record as a whole, not isolate a specific portion thereof. *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

A disability claim is evaluated using five-step analysis. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to

prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV. The ALJ's Decision

At step, one the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 15, 2021. AR 17. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, atrial fibrillation, degenerative disc disease of the lumbar spine status post laminectomy and foraminotomy, and seizure disorder. AR 17–18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18–19.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> occasionally stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs, but never climb ropes, ladders, or scaffolds; cannot work at unprotected heights; and cannot work around hazards, extreme cold, or dampness. The claimant will also need to adjust positions every 15 minutes for one to two minutes at his workstations.

AR 19.

At step four, the ALJ concluded that Plaintiff could not perform his past relevant work as a laborer, machine driller, derrick worker. AR 23. At step five, in reliance on the VE's testimony, the ALJ found that there were jobs existing in significant numbers in the national economy which Plaintiff could perform: fundraiser II, survey worker, and marker. AR 25. Accordingly, the ALJ concluded that Plaintiff was not disabled since the alleged onset date of March 15, 2021. AR 26.

### V. Issues Presented

Plaintiff asserts three claims of error: **1**- the ALJ improperly rejected treating Dr. Tiwana's opinion; **2**- the ALJ improperly rejected Plaintiff's symptom testimony about his lumbar spine impairment; **3**- the RFC was too vague.

### A. Vague RFC

Plaintiff's third claim will be addressed first as it is the simplest. Plaintiff alleges the RFC was impermissible vague, and explains as follows:

> In the RFC determination, the ALJ found Plaintiff would need to adjust positions every 15 minutes for one to two minutes at his workstation (Tr. 19). In her hypothetical question to the vocational expert, the ALJ asked her to assume an individual who "needs to adjust positions every 15 minutes for one to two minutes at the station" (Tr. 62). In both her RFC finding and her hypothetical question to the vocational expert, <u>the ALJ failed to specify whether such position adjustment would take Plaintiff off task from his work</u> and no clear parameters were provided by the ALJ or the vocational expert on this issue (Tr. 19, 62). If moving positions every 15 minutes for 1-2 minutes was time spent off task, then Plaintiff would be off task up to greater than 10% of the workday. See White v. Kijakazi, 44 F.4th 828, 831 (9th Cir. 2022) (noting a vocational expert's testimony that a claimant would be unemployable if the claimant was off task more than 10% of the workday).

The argument is not persuasive. First, in this setting a commonsense interpretation of the phrase "at his workstation," reasonably implies he would remain on task. If not, there would be no reason to specify that the position adjustment would occur at his workstation.

Second, position changes of 1-2 minutes duration would, on average, amount to position changes every 1.5 minutes, which is exactly 10% of 15 minutes. Thus, even if Plaintiff was "off-task" during those 1.5 minute position changes every 15 minutes, this would still not amount to <u>greater</u> than 10% off task behavior as it would amount to exactly 10% off task behavior. Plaintiff might counter that 1-2 minute position adjustments could take <u>up to</u> 2 minutes, but Plaintiff has not done so and there doesn't appear to be a reason to use the higher end of that range rather than the mid-point.

In sum, based on the ALJ's phrasing of the limitation quoted above, there is little basis to conclude that Plaintiff would be off task greater than 10% of a workday.

### B. RFC Generally; Evaluation of Medical Opinions

#### 1. Applicable Law

4

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate the pre-existing hierarchy of medical opinions. The revised regulations provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2. **Analysis**

On July 31, 2022, Dr. Tiwana completed a physical RFC opinion regarding Plaintiff's lumbar spine. AR 527–28. Dr. Tiwana opined that Plaintiff would need to recline/lie down in a workday more than normal breaks. Id. Dr. Tiwana opined that Plaintiff could walk 1-2 city blocks without rest or significant pain, could sit for 4 hours and stand/walk for 2 hours in an 8-hour workday. Id. Dr. Tiwana further opined that Plaintiff cannot lift/carry any weight (AR 527), and opined that Plaintiff would miss more than 4 monthly days of work. AR 528.

The ALJ addressed the opinion as follows:

> The undersigned finds Dr. Tiwana's opinion to be unpersuasive. Dr. Tiwana does not support her opinion with reference to any objective medical evidence, nor is her opinion consistent with the longitudinal record. Specifically, the claimant had undergone back surgery prior to the date Dr. Tiwana provided her opinion and the procedure was considered to be a success with the claimant returning to his usual activities, which does not show the claimant cannot lift even 10 pounds (Ex. 20F at 45).

However, the ALJ's earlier discussion of the objective evidence tells a different story.

6

Despite initially being considered a success in the early days and weeks following the surgery, the evidence demonstrates that the surgery was not significantly successful over the long term. The ALJ provided the following discussion earlier in the objective summary:

> the claimant underwent a lumbar laminectomy and foraminotomy in order to address pain in his lumbar spine in July 2021(Ex. 8F at 12). Following surgery, the claimant was discharged home with antibiotics (Ex. 8F at 12). Two months after the surgery the claimant was <u>back to his usual activities and had full strength in all extremities on physical exam</u> (Ex. 20F at 45). In September 2021, the <u>examining physician considered the surgery to have an excellent result</u> and advised the claimant that some residual back pain was normal, but cautioned the claimant that he may find it difficult to return to his current job as a laborer in an oil field (Ex. 8F at 12). However, the claimant continued to complain of back pain, <u>and underwent three epidural steroid injections which provided some relief, but subsequent injections were less effective (Ex. 31F at 8-9). Imaging of the claimant's spine showed moderate stenosis and a disc osteophyte complex (Ex. 31F at 8). Lumbar fusion was recommended for treatment (Ex. 31F at 9). Physical exams show the claimant to have an antalgic gait and favoring his right leg, as well as decreased range of motion in the lumbar spine.</u> However, the claimant has full strength in all extremities (Ex. 3F at 8; Ex. 28F at 4; Ex. 29F at 18, 24; Ex. 32F at 39-40; Ex. 33F at 2, 5).

AR 20 (emphasis added).

In addition, despite Dr. Chen, Plaintiff's surgeon, describing an "excellent result" 2 months post-op, in the ensuing years pain levels were unresponsive to three epidural injections. Years later in July 2023, an additional lumbar spine MRI noted 7 mm left foraminal disc osteophyte complex with moderate stenosis <u>that had worsened</u> since the July 2021 MRI conducted 2 years earlier. AR 912, 496. In 2023 Plaintiff reported back pain upwards of 7/10 with lower extremity radiculopathy, in contrast to the lack of leg pain post-op in 2021. Dr. Chen concluded in August 2023 that no further procedures were indicated. Plaintiff sought a second opinion from Dr. Serxner who explained as follows:

> Given the patient has a history of L5-S1 decompression on 7/2022 with now having back pain levels at 5-7/10 with associated left lower extremity pain and radiculopathy levels at 0-5/10. Patient reports 90% of total pain complaint originates from the back. With recently having undergone 3 lumbar epidural steroid injections with pain management provider with subsequent injections having reduced relief, I recommended and offered the patient surgical intervention in the form of Anterior Lumbar Interbody Fusion at lumbar levels L5-S1 with or without posterior

decompression. AR 1048.

Although some records suggested pain was well controlled with medication, this notably included opioid medication (norco among others, (AR 482; 74; 50)). Considering that Dr. Serxner recommended a fusion procedure to relieve continued pain, it is questionable whether long term use of opioids would have been an advisable alternative. The ALJ citing this medication as an adequate remedy seems, perhaps erroneously, to assume the long-term sustainability of such a remedy.

Further, despite the ALJ's emphasis on full extremity strength post-op, noted at the beginning and end of the above quoted discussion, examinations frequently reflected an abnormal or antalgic gait[2] as the ALJ acknowledged. Compared to muscle strength, gait abnormalities are just as relevant—if not more so—as an indicator of Plaintiff's ability to stand/walk 6 of 8 hours as required by the RFC for light work. See SSR 83-10.

In sum, following the July 2021 laminectomy and foraminotomy: **1**- Plaintiff reported initial pain relief and return to normal activities; **2-** 2 months post-op Dr. Chen considered it an excellent result; **3**-in the ensuing years significant axial back pain returned along with radicular leg pain; **4**- multiple rounds of epidurals failed to provide significant lasting relief; **5**- an updated lumbar spine MRI demonstrated moderate abnormalities, worse in some respects; **6**- gait was routinely noted as abnormal; and **7**- Dr. Serxner ultimately recommended L5/S1 fusion. The RFC for light exertional work is inconsistent with much of the above.

Defendant also emphasizes Dr. Van Kirk's consultative examination in January 2023, and Dr. Van Kirk's recommendation that Plaintiff could perform light exertional work, which was supported by Dr. Van Kirk's own examination and consistent with the ALJ's assessed RFC.

The ALJ summarized Dr. Van Kirk's exam as follows:

---

[2] AR 75, 93, 112, 125, 565, 980, 995, 1014, 1020, 1083–84, 1103, 1106.

A comprehensive internal medicine evaluation was performed by consultative examiner (CE) Dale H. Van Kirk, M.D., on January 10, 2023 (Ex. 10F). Dr. Van Kirk interviewed the claimant, reviewed past imaging studies, and performed a physical exam as part of the evaluation (Ex. 10F). Dr. Van Kirk noted the claimant sat comfortably in the exam chair, was able to get up from the chair, walk around the exam room, and get on and off the examination bench without difficulty (Ex. 10F at 3). Dr. Van Kirk also noted the claimant had a normal heart rate and rhythm, had some limitation in range of motion in the lumbar spine, and full strength in the upper and lower extremities, including grip strength, with normal bulk and tone (Ex. 10F at 4-5). Dr. Van Kirk opined the claimant could walk or stand for up to six hours out of an eight-hour workday; had no limitations on sitting; should be limited to light exertion levels; should be limited to occasional postural activities; and have no exposure to extremely cold or damp environments (Ex. 10F at 6).

AR 22 (citing AR 567–73).

The ALJ noted that Dr. Van Kirk reviewed imaging results. However, this would be the June 2020 MRI. Importantly, Dr. Van Kirk's exam was conducted in January 2023, prior to the <u>July 2023 MRI</u> that Dr. Serxner reviewed which noted a 7 mm left foraminal disc osteophyte complex at L5-S1, and a left neural foramen moderately stenosed <u>with a worsening of his left foraminal stenosis at L5-S1 compared to his prior MRI.</u> AR 912. Dr. Van Kirk was equally unaware of Dr. Serxner's subsequent recommendation for fusion surgery. Further, despite Dr. Van Kirk's relatively benign physical examination findings regarding strength and range of motion does not account for Plaintiff's later severe residual pain post-op and his gait dysfunction.

Thus, the ALJ's conclusions regarding Plaintiff's lumbar spine impairment and associated pain and limitation was supported by little more than post-op exams of full strength, Plaintiff's return to normal activities in the short term, and Dr. Chen's characterization of "excellent results" 2-months post op. This is not substantial evidence when weighed against post-surgical complaints of severe pain partially controlled by opioids with minimal relief from epidurals, numerous findings of antalgic and/or abnormal gait,[3] post-surgical follow-up MRIs demonstrating residual moderately dysfunctional spinal pathology (worse in some respects), and the surgical recommendation of Dr.

---

[3] AR 75, 93, 112, 125, 565, 980, 995, 1014, 1020, 1083–84, 1103, 1106.

Serxner, who unlike Dr. Van Kirk, had access to all pertinent records.

Finally, the parties dispute which records Dr. Tiwana, author of the July 2022 opinion, had access too, and the supportability of Dr. Tiwana's opinion. Defendant and the ALJ emphasized the unsupportability of the extreme limitations Dr. Tiwana identified, who essentially noted next to no residual ability to lift any amount of weight, sit, stand, or walk for any significant period of time.

Here, there is a wide range of potential RFC assessments which likely exist between Dr. Tiwana's opinion and the ALJ's assessment that Plaintiff can perform light work with the corresponding ability to stand and walk 6 of 8 hours per day.

Finally, there is the ALJ's allegedly improper rejection of Plaintiff's pain testimony. However, at this point there is little need to discuss this an alternative theory of relief as Plaintiff discusses little if any testimony describing limitations or pain levels not already reflected in the above discussion which noted upwards of 7/10 pain levels in his back/hip/leg despite the 2021 surgery, epidurals, and pain medication—including Plaintiff's associated physical limitations such as difficulty with extended sitting, standing, and walking. Plaintiff's testimony offers little novel information on these issues.[4]

## VI.  **Conclusion and Order**

For the reasons stated above, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, it is ordered that:

1. Plaintiff's motion for summary judgment (Doc. 11) is **GRANTED**.

2. Defendant's cross motion (Doc. 15) is **DENIED.**

3. The Commissioner's decision is reversed, and this matter is remanded to the

---

[4] Further, considering the "clear and convincing" standard that applies to rejection of subjective complaints is characterized as "the most demanding standard required in Social Security cases," if the ALJ's analysis fails for the reasons noted above, it equally fails the "most demanding standard" in social security cases. See. Moore v. Commissioner of SSA, 278 F.3d 920, 924 (9th Cir. 2002).

Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

4. The Clerk of Court is directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **July 25, 2025**          **/s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE